UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/18/18
```

| | |
|---|---|
| IN RE HEARTWARE INTERNATIONAL, INC. SECURITIES LITIGATION | No. 1:16-cv-00520-RA |

## APPLICATION FOR THE ISSUANCE OF
## INTERNATIONAL LETTER OF REQUEST (LETTER ROGATORY)

Lead Plaintiff St. Paul Teachers' Retirement Fund Association ("Lead Plaintiff"), respectfully petitions this Court pursuant to the provisions of the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, 23 U.S.T. 2555, 847 U.N.T.S. 231, 28 U.S.C. § 1781 (the "Hague Evidence Convention"), for the issuance of a Letter of Request in the form annexed hereto as Exhibit A, addressed to the Senior Master of the High Court (Queen's Bench Division) acting as the Competent Judicial Authority of the United Kingdom, requesting that the Senior Master cause the Letter of Request to be served upon the designated recipient, who is a representative of Chiltern International, Ltd. ("Chiltern"). This Court's approval is the initial step in requesting information from the relevant authority in the United Kingdom. Lead Plaintiff understands that in considering this Application, the Court is not passing judgment on the ultimate merits of any claim or defense. In support thereof, the Applicant respectfully represents as follows:

### BACKGROUND

On June 29, 2016, Lead Plaintiff filed an Amended Class Action Complaint in *In re HeartWare International, Inc. Securities Litigation*, No. 1:16-cv-00530-RA (the "Complaint").[1]

---

[1] All references to "¶__" are to the Complaint.

ECF No. 29. Plaintiff asserts claims under Sections 10(b) and 20(a) of the Exchange Act, and alleges that Defendants HeartWare International, Inc. ("HeartWare") and its CEO, Douglas Godshall ("Godshall") made materially false and misleading statements and failed to disclose material facts concerning: (i) the safety and commercial viability of HeartWare's new heart pump, or Ventricular Assist Device, called MVAD; and (ii) HeartWare's remediation of issues identified in a June 2, 2014 Warning Letter from the FDA. Defendants deny the allegations against them.

As alleged in the Complaint, during the relevant time period, HeartWare began medical trials for MVAD in Europe (the "CE Mark Trial"), a critical step in obtaining regulatory approval in Europe, which would be followed by regulatory review in the United States and ultimately, the commercial introduction of MVAD domestically. ¶7. Unbeknownst to investors, in the first 11 patients implanted with MVAD in the CE Mark Trial, there were allegedly three incidents of pump thrombosis – a serious and potentially deadly adverse event that had the potential to destroy MVAD's commercial viability. ¶22. When rumors started to swirl in the market in and around October 2015 that adverse events may have occurred in the CE Mark Trial, Defendants reassured investors that the events were "typical of those seen in other clinical trials for ventricular assist devices," without disclosing the number or type of adverse events that had occurred. ¶24. In denying Defendants' motion to dismiss Plaintiff's Complaint, this Court noted that "in response to concern over rumors of adverse events in the CE Mark trial,

Godshall told investors that adverse events were 'typical of those seen in other clinical trials for ventricular assist devices,' even though Defendants allegedly possessed data showing that MVAD was causing adverse events at a rate substantially surpassing the norm and far more quickly than was typical." Exhibit B (Excerpt of March 16, 2018 Hearing Transcript at 40:11-19).

Chiltern (previously Theorem Clinical Research) was HeartWare's third party contract research organization in connection with the CE Mark Trial. In that capacity, Chiltern was responsible for managing aspects of the CE Mark Trial. Thus, Chiltern possesses critical information regarding the CE Mark Trial and any adverse events during the trial, which information is directly relevant to the claim that Defendants made false and misleading statements regarding the trial or MVAD's safety. Lead Plaintiff only recently discovered the existence and role of Chiltern through Defendants' responses to interrogatories and document production.

## RELIEF REQUESTED

1. Lead Plaintiff therefore requests that this Court issue the Proposed Order:

(a) Providing for this Court to sign the Letter of Request and affix the seal of the United States District Court for the Southern District of New York over said signature in the Letter of Request;

(b) Requiring that the Clerk of the District Court return the original, signed Letter of Request to Lead Plaintiff, so that said Letter of Request may be delivered to the Senior Master of the High Court (Queen's Bench Division) acting as the Competent Judicial Authority of the United Kingdom, which is the domicile of the designated recipients from whom evidence is sought; and

(c) Directing counsel for Lead Plaintiff to transmit the original, signed Letter of Request to the Competent Judicial Authority of the United Kingdom; so that Lead

Plaintiff may obtain for use at trial potential evidence material to the claims and defenses at issue in the above-captioned litigation.

2. The entity from whom evidence is sought by the Letter of Request is Chiltern International, Ltd., which was Defendant HeartWare's third-party contract research organization during the relevant time period. Chiltern and its representatives have knowledge of facts bearing on issues central to this case, and the documents and testimony sought are material to Lead Plaintiff's asserted claims.

3. Nothing in the Letter of Request or in the Proposed Order will affect Lead Plaintiff's rights or defenses as to the admissibility of the evidence sought, and Lead Plaintiff expressly reserves such rights or defenses.

4. Lead Plaintiff has considered the requirements of the Courts of England and Wales in respect of letters of request, including the form in which the Letter of Request should be presented to the English Court and their permissible content. Lead Plaintiff believes that this Letter of Request is consistent with these requirements, as contained in the UK Evidence (Proceedings in Other Jurisdictions) Act 1975 and Part 34 of the Civil Procedure Rules. This Court is requested to issue this Letter of Request on this basis.

5. Lead Plaintiff requests that after this Court has signed the Letter of Request, it be returned to Lead Plaintiff for forwarding to the Senior Master of the High Court (Queen's Bench Division) acting as the Competent Judicial Authority of the United Kingdom, Royal Courts of Justice, Strand London WC2A 2LL, United Kingdom (for the attention of the Foreign Process Section, Room E16).

6. WHEREFORE, Lead Plaintiff respectfully requests that the Court enter the Proposed Order (i) providing for this Court to sign the Letter of Request and affix the seal of

the United States District Court for the Southern District of New York over said signature of the Letter of Request; (ii) directing that the Clerk of the District Court return the original, signed Letter of Request to counsel for Lead Plaintiff, so that said Letter of Request may be issued to the Competent Judicial Authority of the United Kingdom; (iii) directing counsel for Lead Plaintiff to transmit the original, signed Letter of Request to the Competent Judicial Authority of the United Kingdom; and (iv) granting such other relief as the Court deems just and proper.

Dated: August 17, 2018

                                                **BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

                                                */s/ John Rizio-Hamilton*
John Rizio-Hamilton
Abe Alexander
Julia K. Tebor
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212)554-1400
Facsimile: (212)554-1444
Email: johnr@blbglaw.com
Email: abe.alexander@blbglaw.com
Email: Julia.tebor@blbglaw.com

*Counsel for Lead Plaintiff St. Paul Teachers' Retirement Fund Association and Lead Counsel for the Class*

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE HEARTWARE INTERNATIONAL, INC. SECURITIES LITIGATION | Master File No. 1:16-cv-00520-RA |

**REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE (LETTER ROGATORY) PURSUANT TO THE HAGUE CONVENTION OF 18 MARCH 1970 ON THE TAKING OF <u>EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS</u>**

The United States District Court for the Southern District of New York presents its compliments to the judicial authorities of the United Kingdom of Great Britain and Northern Ireland (the "United Kingdom") and requests assistance in obtaining documentary and testimonial evidence from a non-party witness located in the United Kingdom to be used in a civil proceeding before this Court. Based on Lead Plaintiff St. Paul Teachers' Retirement Fund Association's ("Lead Plaintiff") application, this Court finds that there are sufficient grounds to obtain documentary and testimonial evidence from Chiltern International, Ltd. ("Chiltern") in the above-referenced action and it should be produced in the interest of justice.

This request is made pursuant to, and in conformity with, Chapter I of the *Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters* (the "Hague Convention"), to which both the United States and the United Kingdom are parties.

The Court asserts that the evidence sought through the present Request is directly relevant to the issues in dispute and is not pre-trial discovery within the meaning of Article 23 of the Hague Convention, that is, merely testimony and documentary evidence intended to lead to relevant evidence for trial. The evidence sought has a direct link with Lead Plaintiff's allegations. This Request fully complies with the United Kingdom's reservations under the Hague Convention.

The particulars of this Hague Evidence Request are as follows:

**SECTION I**

1. **Sender:**

    John Rizio-Hamilton, Esq.
    BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP
    1251 Avenue of the Americas, 44th floor
    New York, NY 10020
    United States of America

    *As Authorized by:*
    Honorable Ronnie Abrams
    United States District Judge
    United States District Court for the Southern District of New York
    Thurgood Marshall United States Courthouse
    40 Foley Square, Room 1506
    New York, NY 10007
    United States of America

2. **Central Authority of the Requested State:**

    The Senior Master, Foreign Process Section, Royal Courts of Justice
    For the attention of the Foreign Process Section
    Room E16
    Royal Courts of Justice
    Strand, London WC2A 2LL

3. **Person to Whom the Executed Request Is to Be Returned:**

    John Rizio-Hamilton, Esq.
    BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP
    1251 Avenue of the Americas, 44th floor
    New York, NY 10020
    United States of America
    Telephone: (212) 554-1400
    Fax: (212) 554-1444
    Email: johnr@blbglaw.com

2

4. **Specification of Date by Which the Requesting Authority Requires Receipt of the Response to the Letter of Request:**

The requesting authority requests that a response be provided as soon as possible, in order to ensure that evidence may be obtained before the deadline for fact discovery to be completed, currently set for January 18, 2019.

**SECTION II**

In conformity with Article 3 of the Hague Convention, the undersigned applicant has the honor to submit the following request:

5. a. **Requesting Judicial Authority (Article 3(a))**

Honorable Ronnie Abrams
United States District Judge
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Room 1506
New York, NY 10007
United States of America

b. **To the Competent Authority of the United Kingdom of Great Britain and Northern Ireland (Article 3)**

United Kingdom of Great Britain and Northern Ireland
Central Authority
The Senior Master
For the attention of the Foreign Process Section
Room E16
Royal Courts of Justice
Strand, London WC2A 2LL

c. **Name of the Case and Any Identifying Number**

*In re HeartWare International, Inc. Securities Litigation*, Master File No. 1:16-cv-00520-RA, United States District Court for the Southern District of New York

6. **Names and Addresses of the Parties and Their Representatives of the Case (Article 3(b))**

a. **Plaintiff:**

St. Paul Teachers' Retirement Fund Association

3

*Represented by:*

John Rizio-Hamilton, Esq.
Abe Alexander, Esq.
Julia K. Tebor, Esq.
BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP
1251 Avenue of the Americas, 44th Floor
New York, NY 10020
United States of America
Telephone: (212) 554-1400
Fax: (212) 554-1444
Email: johnr@blbglaw.com
Email: abe.alexander@blbglaw.com
Email: Julia.tebor@blbglaw.com

**b. Defendants**

HeartWare International, Inc. and Douglas Godshall

*Represented by:*

Michael G. Bongiorno, Esq.
Fraser L. Hunter, Esq.
Jeremy T. Adler, Esq.
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
United States of America
Telephone: (212) 230-8800
Email: Michael.bongiorno@wilmerhale.com
Email: fraser.hunter@wilmerhale.com
Email: Jeremy.adler@wilmerhale.com

7. **Nature and Purpose of the Proceedings and Summary of the Facts (Article 3(c))**

   a. **Nature and Purpose of the Claims**

The above-captioned action is a civil action alleging claims under the anti-fraud provisions of the U.S. Securities Exchange Act of 1934 on behalf of all persons who acquired common stock of Defendant HeartWare International, Inc. ("HeartWare" or the "Company") between June 10, 2014 and January 10, 2016. This case arises from alleged misstatements and omissions made by Defendants about the safety and commercial viability of

4

HeartWare's heart pump, called the "MVAD," and the Company's remediation of issues identified in a Warning Letter issued to the Company by the U.S. Food and Drug Administration. On March 16, 2018, the United States District Court for the Southern District of New York denied Defendants' motion to dismiss the Amended Complaint.

The deadline for discovery by the parties is January 18, 2019. This timeline underscores the urgency of this request and Lead Plaintiff's interest in obtaining documents from Chiltern as soon as possible.

In making this request, the Court passes no judgments on the ultimate merits of any claim or defense.

### b.  Plaintiff's Allegations

#### (i)  Plaintiff's Claims Generally

On June 29, 2016, Plaintiff filed its Amended Class Action Complaint (the "Complaint"). The Complaint alleges that Defendants made materially false and misleading statements and failed to disclose material facts concerning: (i) the safety and commercial viability of HeartWare's new heart pump, or Ventricular Assist Device, called MVAD; and (ii) HeartWare's remediation of issues identified in a June 2, 2014 Warning Letter from the U.S. Food and Drug Administration.

As alleged in the Complaint, at the beginning of the Class Period, HeartWare was close to beginning medical trials for MVAD in Europe (the "CE Mark trial"), a critical step in obtaining regulatory approval in Europe, which would be followed by regulatory review in the United States and ultimately, the commercial introduction of MVAD domestically. However, on June 3, 2014, HeartWare received a Warning Letter from the FDA informing it of significant deficiencies in its manufacturing, testing, and validation processes at its only manufacturing

5

facility, where it manufactured its VAD devices. The Warning Letter raised questions about the process by which MVAD was tested and produced, and thus, MVAD's integrity. To alleviate investor concern, Defendants repeatedly assured investors that HeartWare was successfully remediating the deficiencies discussed in the Warning Letter. Defendants also assured investors that MVAD's safety profile was strong. For example, with regard to pump thrombosis, a complication arising from the formation of an obstructive blood clot in the VAD that can lead to stroke, renal failure, or death, Defendants told investors that "we frankly can't thrombus, no matter how hard we try in the MVAD."

Plaintiff alleges, however, that the facts inside HeartWare were at odds with Defendants' public statements. Despite Defendant Godshall's repeated assurances that HeartWare was successfully remediating the deficiencies identified in the FDA Warning Letter, the Company allegedly did little to nothing to change its testing, validation, and quality control processes after receiving the Warning Letter. Moreover, while Defendants touted MVAD's safety profile, its testing was allegedly inadequate to support such statements. Further, what little testing the Company did, according to Plaintiff, revealed serious safety problems with MVAD, including defects that increased risk of pump thrombosis.

The Complaint further alleges that, nevertheless, facing intense commercial pressure to bring MVAD to market, HeartWare began the CE Mark Trial in July 2015 – and the problems concealed by Defendants' statements quickly materialized. Unbeknownst to investors, in the first 11 patients implanted with MVAD in the CE Mark Trial, there were three incidents of pump thrombosis – a serious and potentially deadly adverse event that had the potential to destroy MVAD's commercial viability. When rumors started to swirl in the market in and around October 2015 that adverse events may have occurred in the CE Mark Trial, Defendants

6

reassured investors that the events were "typical of those seen in other clinical trials for ventricular assist devices," without disclosing the number or type of adverse events that had occurred. Contrary to Defendants' statements, Plaintiff alleges, the adverse thrombotic events were far from typical. In fact, these rates of pump thrombosis constituted a 27% adverse event rate. This rate was 7 to 13 times greater than the rate observed in prior studies of competing VADs, according to the Complaint. Additionally, the pump thrombosis occurred unusually quickly, with a median time of approximately 8 months after implantation, while other devices had exhibited a far longer time to thrombosis of 18.6 months.

Chiltern (previously Theorem Clinical Research) was HeartWare's third party contract research organization in connection with the CE Mark Trial. In that capacity, Chiltern was responsible for managing aspects of the CE Mark Trial. Thus, Chiltern possesses critical information regarding the CE Mark trial and any adverse events during the trial, which information is directly relevant to the claim that Defendants made false and misleading statements regarding the trial or MVAD's safety. Lead Plaintiff only recently discovered the existence and role of Chiltern through Defendants' responses to interrogatories and document production.

According to the Complaint, there were partial disclosures starting on September 1, 2015 and ending on January 11, 2016. These disclosures caused HeartWare's stock to decline significantly, resulting in substantial damages to Plaintiff and the other HeartWare investors.

### (ii) Plaintiff's Claims as They Relate to Chiltern

Testimony from a Chiltern witness and documentary evidence from Chiltern is necessary as it relates to the central issues relevant to the claims and defenses in this action. As noted above, Chiltern managed aspects of the CE Mark trial. The evidence sought is highly relevant to Lead Plaintiff's discovery of Defendants' knowledge during the relevant time period and Lead

7

Case 1:16-cv-00520-RA Document 60-1 Filed 08/17/18 Page 9 of 15

Plaintiff's allegations that Defendants' statements were contrary to the facts known at the time and, thus, were false and misleading.

### (iii) Summary of Defense

In their motion to dismiss the Complaint, Defendants argued that Lead Plaintiff did not adequately allege that Defendants made material false statements or that Defendants acted with the required state of mind, i.e., knowledge or recklessness with respect to the falsity of their statements. After the Court denied the motion to dismiss, Defendants filed an Answer in which they denied that they knowingly or recklessly made material false statements and asserted various affirmative defenses, including that they acted in good faith.

### 8. Evidence to Be Obtained and Purpose

This Court requests that, pursuant to the Hague Convention, the appropriate judicial authority in the United Kingdom compel the appearance of a representative of Chiltern, provided such person can be shown to have relevant knowledge, to provide oral testimony for use at trial (if appropriate) to counsel for the Applicant subject to any applicable privileges that may apply under the rules and procedures of the Requesting Court or the courts of England and Wales. The witness's unique importance to the claims and defenses is described both above and in the subject matters as to which the Witness is to be examined, detailed in Section 10 below. Absent voluntary cooperation, evidence from the Witness is available only by an order of the High Court.

The witness from whom the testimony is sought resides in the United Kingdom and is, upon information and belief, neither domiciled nor doing business in the United States. Thus, this Court cannot directly compel him or her to provide the requested testimony.

More particularly, sworn testimony pursuant to this Letter of Request is admissible evidence under United States law, specifically, Federal Rule of Civil Procedure 28(b) and

Federal Rule of Evidence 804, and may be offered at trial in the above-captioned case. Plaintiff seeks testimony regarding multiple issues relevant to the claims and defenses in this case, specifically including: (i) MVAD's safety profile; and (ii) adverse events during the clinical trial of MVAD, including pump thrombosis, and the causes thereof.

While this Court expresses no view as to the merits or otherwise of the Complaint, Answer, or any related motions in the above-captioned case, it believes that the evidence sought here will be relevant to and either probative or disprobative of material facts relevant to the Complaint, the Answer, and any motions in the case.

**9.   Identity and Address of the Person to Be Examined (Article 3(e))**

>   Representative
>   Chiltern International, Ltd.
>   171 Bath Road, Slough
>   SL1 4AA, UK

**10.  Statement of the Subject Matter About Which the Person Will Be Examined (article 3(f))**

Accordingly, the Court requests that questioning be permitted of the witness concerning the following topics:

(1)   Chiltern's understanding of and communications with HeartWare employees regarding MVAD's safety profile, including: (i) analyses comparing MVAD's safety profile with any other VAD; (ii) the propensity of MVAD to experience, include, or cause pump thrombosis, promote clot formation, or cause sheer stress; (iii) animal testing of MVAD; (iv) in-human testing of MVAD; (v) bench testing of MVAD; and (vi) MVAD's: (a) controller, (b) software; (c) impeller; (d) suction alarm; (e) driveline connectors; (f) battery; or (g) qPulse algorithm;

(2)   The safety of MVAD, including the propensity of MVAD to cause or induce pump thrombosis;

(3)   Studies, analyses or trials reporting a rate, incidence, or time-to-event of pump thrombosis associated with MVAD and (ii) Communications with any health care professional concerning the rate, incidence, or time-to-event of pump thrombosis associated with MVAD; and

9

(4)  The CE Mark trial of MVAD, including any adverse events in the trial, such as pump thrombosis.

**11.  Documents and Other Evidence to Be Examined (Article 3(g))**

It is requested that Chiltern be required to produce the specified documents described herein as are believed to exist in its power, possession or control. Such documents are necessary for the purposes of justice and for the due determination of the matters in dispute between the parties. Unless otherwise stated in a document request, all Documents and Communications requested are for the period from January 1, 2014 through October 24, 2017 (the "Relevant Time Period"), and shall include Documents and Communications that relate, in whole or in part, to such period even though dated, prepared or received before or after that period. If a Document or Communication is undated and the date of its preparation cannot be determined, it shall be produced if otherwise responsive to these requests.

(1)  Daily safety reports created by Chiltern in connection with the CE Mark Trial of MVAD;

(2)  Documents and Communications concerning the safety of MVAD, including the propensity of MVAD to cause or induce pump thrombosis.

(3)  Documents and Communications concerning:

   (a)  Animal testing of MVAD;

   (b)  In-human testing of MVAD;

   (c)  Bench testing of MVAD;

   (d)  MVAD's: (i) controller, (ii) software; (iii) impeller; (iv) suction alarm; (v) driveline connectors; (vi) battery; or (vii) qPulse algorithm.

(4)  Documents and Communications concerning (i) studies, analyses or trials reporting a rate, incidence, or time-to-event of pump thrombosis associated with MVAD and (ii) Communications with any health care professional concerning the rate, incidence, or time-to-event of pump thrombosis associated with MVAD.

10

(5) Documents and Communications regarding the CE Mark trial of MVAD, including:

    (a) Communications with HeartWare.

    (b) Communications with study investigators;

    (c) Any delay, pause, postponement, or cancellation of enrollment, implantation, or data analysis in the CE Mark trial;

    (d) Pump thrombosis and other adverse events and the causes thereof; or

    (e) Communications with any government entity.

**12. Requirement That the Evidence Be Given on Oath or Affirmation (Article 3(h))**

This Court requests that testimony be taken under oath or affirmation. Pursuant to United States Federal Rule of Evidence 603, this Court requests that the witness be required to declare that he or she will testify truthfully, by oath or affirmation administered in a form calculated to awaken his conscience and impress his mind with the duty to do so.

**13. Special Procedures or Method to Be Followed (Article 3(i))**

The examination shall be taken under the Federal Rules of Civil Procedure of the United States, except to the extent such procedure is incompatible with the internal laws of the United Kingdom. This Court requests: (1) that the examination be taken orally; (2) that the examination be taken before a commercial stenographer and audio recorder selected by Lead Plaintiff; (3) that the stenographer be permitted to record the examination by audio means; (4) that the stenographer be allowed to record a verbatim transcript of the examination; (5) that counsel for Lead Plaintiff and counsel for Defendants be notified as soon as possible of the date, time, and place of the examination, along with any other pertinent information, including what authority has been appointed to preside over the deposition; (6) that counsel for Lead Plaintiff and counsel for Defendants be permitted to question the witness regarding the subject matter described in Section 10 of this Request; (7) that 7.0 hours be allotted for the examination; (8) that the examination be closed to the public; and (9) that the witness be examined as soon as possible.

This Court further requests that (1) counsel for the parties and the witness be permitted to object to the form of questions just as they would in a deposition taken in the United States pursuant to the Federal Rules of Civil Procedure; (2) any such objections be recorded by the stenographer; and (3) to the extent reasonably necessary to avoid the disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, counsel be permitted to direct the witness not to answer.

Pursuant to the Stipulation and Modified Protective Order entered in this action by the U.S. District Court for the Southern District of New York on July 2, 2018, the questioning of the witness, the witness's testimony, and any transcript or audio recording of the questioning and testimony will be designated as "Confidential" in accordance with the Stipulation and Protective Order.

If the evidence cannot be taken according to some or all of the procedures described above, this Court requests that it be taken in such manner as provided by the applicable law of England for the formal taking of testimonial evidence.

When required, this Court will provide similar assistance as requested herein to the appropriate judicial authorities of the United Kingdom

**14.  Request for Notification of the Time and Place for the Execution of the Request and Identity and Address of Any Person to Be Notified (Article 7)**

Please send notice of the time and place for execution of this Request to:

Clerk of the United States District Court
　for the Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007
United States of America

John Rizio-Hamilton, Esq.
BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP
1251 Avenue of the Americas, 44th Floor

12

New York, NY 10020
United States of America
Telephone: (212) 554-1400
Fax: (212) 554-1444
Email: johnr@blbglaw.com

Michael G. Bongiorno, Esq.
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
United States of America
Telephone: (212) 230-8800
Email: Michael.bongiorno@wilmerhale.com

**15.   Request for Attendance or Participation of Judicial Personnel of the Requesting Authority at the Execution of the Letter of Request (Article 8)**

Yes.

**16.   Specification of Privilege or Duty to Refuse to Give Evidence Under the Law of the State of Origin (Article 11)**

Under the laws of the United States, a witness has a privilege to refuse to give evidence if to do so would disclose a confidential communication between the witness and his attorney that was communicated specifically for the purpose of obtaining legal advice and which privilege has not been waived. United States law also recognizes a privilege against criminal self-incrimination. Other limited privileges on grounds not applicable here also exist, such as communications between doctors and patients, husband and wife, and clergy and penitent. Certain limited immunities are also recognized outside the strict definition of privilege, such as the limited protection of work product created by attorneys during or in anticipation of litigation.

**17.   Reimbursement (Article 14)**

The fees and costs incurred in the execution of this Request which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Hague Convention will be borne by the above-named Plaintiff.

Date of Request: _September 18_, 2018
                        Month, Day

SIGNATURE AND SEAL OF THE REQUESTING AUTHORITY

(Affix seal here.)

_[signature]_

Honorable Ronnie Abrams
United States District Judge
United States District Court for the
Southern District of New York

14